684

## Le Strange's Petition

*Harry Shapiro*, for petitioner.

STERN, P. J., April 22, 1935.—On February 13, 1935, the police confiscated a slot machine at the southeast corner of Broad and Race Streets, and another at 1341 Arch Street, Philadelphia. The one is known as a "Mutoscope Electric Traveling Crane" 5-cent claw machine, and the other as a "Novelty Merchant-man" 5-cent claw machine. They were then and there being commercially offered for patronage by the general public and were so used and operated. They were confiscated as being unlawful gambling devices, and the superintendent of police in accordance with section 60 of the Act of March 31, 1860, P. L. 382, filed returns and petitions for orders to destroy the machines. The act provides for the seizure of "any device or machine of any kind, character or description whatsoever, used and employed for the purposes of unlawful gaming as afore-said". The phrase "unlawful gaming as aforesaid" evidently refers to section 55 of the act, which provides that: "If any person shall set up or establish . . . any game or device of . . . hazard . . . at which money or other valuable thing may or shall be played for, or staked or betted upon", etc.

To the petitions of the superintendent of police answers were filed in the one case by Exhibit Sales Company, and in the other by Quaker City Merchandise Sales Corporation. These answers were to the effect that the machines seized were not gambling devices but lawful vending machines, and that their opera-tion is "in no way dependent upon the element of chance but is accomplished entirely by the skill of the person operating the machine."

A hearing was held on February 23, 1935, and from the testimony then pre-sented the court finds the facts to be as hereinafter set forth.

There is no substantial difference between the two machines. Each of them is a mechanical device consisting of a miniature crane with an iron claw of three talons attached by a small chain to the arm of the crane. This contrivance is enclosed in a glass compartment, the floor of which is covered with small candy beans of a depth of 1 or 2 inches. Strewn about in these beans and more or less enmeshed in them are various articles of merchandise, such as opera glasses, pipes, cigarette cases, hair brushes, vanity cases, cameras, pencils, and the like. The machine is operated by first fixing the position of the iron claw so that it will descend on or near any desired article on the floor of the compartment, this being done by turning a small manually controlled wheel. It appears, however, that the mechanism of the wheel moves the crane only sidewise, but simultane-ously with such motion there is a motion backwards and forwards which is

entirely beyond the control of the operator. The result is that while to some extent the operator can determine the approximate point at which the claw will fall, he cannot accomplish this with any real degree of accuracy. In other words, the mechanical force which determines the place where the claw will descend is only partly within the control of the operator.

After the position of the crane has thus been fixed to the extent to which it is possible to do so, the operator deposits a nickel in the slot, and then the machine begins to operate automatically. The arm of the crane descends and with it the claw suspended from it. The claw may fall partly or wholly on a portion of the compartment floor not occupied by an article of merchandise, or it may fall directly on an article but in such manner that the claw does not get any grip on it, or the claw may grip the article sufficiently to move it from the candy in which it is partly embedded but the tenacity of the hold is not sufficient to raise and retain the object in the grip of the claw, or the claw may get such a firm clasp as to pull the object up from the candy and carry it to a chute in the back of the machine where it will be released from the claw and dropped out into the hands of the operator.

The object of the operator is to secure one of the articles of merchandise which are temptingly spread out before him in the candy, these articles ranging in value from a few cents to several dollars. They are of various shapes and sizes, and it would seem that only in comparatively rare instances is the operator fortunate enough to have the claw descend on one of the articles in such a way as to encircle it and grip it firmly enough to raise and hold it until it is ejected from the machine. Of course the proprietor of the machine can make its successful operation more or less difficult by the way in which he selects articles of a favorable or unfavorable contour, by the number of articles which he spreads around on the floor of the compartment, and by the depth to which he embeds the articles in the candy beans.

A police sergeant testified that he made a total of 418 plays on 55 of these claw machines and secured nine articles of merchandise; also that he observed plays made by 15 other persons, who, out of 209 attempts, won only three articles. A person selected by the owners of one of the machines and presented by them to the court as an "expert" operator, played the machine in the presence of the court 15 times, but his only success was on the fifth play when he obtained a pencil of very small value. This witness testified that he spent up to $7 a week in playing these machines. Another so-called "expert", also presented by the owners, played one of the machines in the presence of the court five times without any success. He testified that some days he spent as much as $7 or $8 playing the machines. The uncertainty of the result of operating the machine is shown by the testimony of the "expert" last mentioned to the effect that sometimes he won a prize on the first nickel and at other times spent as much as $6 (120 plays) without winning anything. Still another operator presented by the owners, who said he spent as much as $15 a week playing the machines, testified that he sometimes obtained an article on the first nickel he spent, and at other times put as much as $3 in the machine (60 plays) without winning a prize and then stopped because he made it a principle never to risk more than that amount at any one time. These figures tell their own story as to the extent to which chance is the controlling factor in the operation.

The general rule in the United States is that a slot machine is a gambling device if chance is the dominant factor in determining the result of its operation although it may be affected to some degree by the exercise of skill or judgment: See 38 C. J. 291, sec. 5. The leading and most recent case in Pennsylvania is Mills Novelty Company's Appeal, 316 Pa. 449, in which the Supreme Court

affirmed per curiam the opinion of Judge Cunningham of the Superior Court. It can be stated in the present case as it was said by the Superior Court in that case: "It cannot be contended by anyone that these machines are mere vending machines through the use of which the patron receives a certain and uniform return in value for the coin deposited therein." The Superior Court opinion referred to the case of Commonwealth v. Goldsmith, 17 D. & C. 145, in which the President Judge of the Court of Quarter Sessions of Cambria County said: "As we understand the law, an apparatus is a gambling device where there is anything of value to be won or lost . . . as the result of chance."

The owners of the machines contended, and some of the "expert" operators whom they produced testified, that the winning of the articles of merchandise depended largely on the skill of the operators. They claimed that an "expert" would use judgment in deciding which articles should be moved out of the way of the desired object before seeking to obtain possession of the latter, and also that by giving the wheel a little spin as the descending claw approached the floor of the compartment an "expert" could cause the claw to drop suddenly and thereby not only change to some slight extent the point where it would fall but also enable it to get a better grip on the article sought. In the opinion of the court, however, this contention is not sustained by the facts. As already stated the operator is able only to a limited degree to set the crane originally so that it will fall at any given spot. Moreover this is not a matter of much consequence, because the real uncertainty is not so much as to the point at which the claw will fall, but as to the exact manner in which, if at all, it will fasten its grip on the prize. The little twist that may be given to the wheel and the more sudden drop of the claw thus occasioned have little or no effect upon the question as to whether the claw will encircle the object in a firm manner or only so feebly and ineffectually that it will slip off. The vital factors are not under the control of the operator.

From the testimony and the actual demonstration of the machines given at the hearing, the court finds as facts: (1) That if there is any element of skill in the operation of the machines it is so slight as to be negligible, and (2) that chance or luck is the overwhelmingly dominant factor in determining the success or nonsuccess of such operation.

The court therefore concludes that the two machines confiscated by the police are unlawful gambling devices within the meaning of the statute law of Pennsylvania.

### Order

And now, to wit, April 22, 1935, upon consideration of the returns and petitions filed by the Superintendent of Police of Philadelphia, and upon motion of David J. Smyth, City Solicitor of Philadelphia, the court finds that the claw device called "Mutoscope Electric Traveling Crane" 5-cent claw machine, bearing serial number SO43, and also the claw device called "Novelty Merchantman" 5-cent claw machine, bearing serial number M493, are each of them gambling devices and were used for the purpose of unlawful gaming when seized, and the court adjudges them and each of them forfeited and orders that they and each of them be forthwith publicly destroyed.